The next case on our calendar is Moza v. New York City Health and Hospitals. Thanks.  Thank you. Good morning. May it please the Court, Stephen Bergstein for the Plaintiff Appellant. Based on the discriminatory comments made by the woman who recommended the plaintiff's termination, the jury may find that the plaintiff was terminated because of his national origin in violation of federal and city law. The district court claimed that those statements weren't in the record below on which he made his decision. They're in the record. How did that happen? It happened because predecessor counsel for the plaintiff, it wasn't me, cited the comment but didn't cite the right exhibit. But they were part of the record because they were part of the EEOC complaint, weren't they?  They were in the record. But they weren't cited precisely to the statement. Was the district judge wrong when he said, I'm not going to consider these because they're not in the record? Yes, because they were in the record. They're in the record. And if he considered them, did he draw the right inferences based on that statement? No. If he considered them, he would have to deny summary judgment because the statement was made by the woman who recommended the plaintiff's termination four or five months later. And this court has said that if the decision maker makes a biased remark with respect to the plaintiff's termination, the jury may infer discriminatory intent. So this is more than a stray remark. This is a remark about his very ethnicity by the very person who determined to fire him. Correct. It's direct evidence. What's the temporal proximity again? The statement was made in April 2013, and this is through his new supervisor, Wall. And Wall then recommended his termination in September. So you're talking five months. But temporal proximity is mostly relevant when you have circumstantial evidence. This is direct evidence. I know how to terminate this stupid Egyptian guy. He's the only Egyptian there. He's terminated based on Natalie Wall's negative performance reviews that she signed off on, and the jury can find that discrimination. Negative performance reviews that were in the record prior to her time as supervisor. Well, that's a little fuzzy because he got four years of positive reviews, and then he gets a negative review in February 2013 that was dated that he didn't see until May when Natalie Wall became the supervisor, and the negative review in February 2013 did not suggest that the plaintiff's job was in jeopardy. So you can get a negative review without necessarily getting fired. And then Natalie Wall becomes the supervisor, and we get three negative reviews in a row that she signs off on, and then she makes that comment about terminating him because he's Egyptian. And so this court has said in Henry v. Wyeth that if the plaintiff has direct evidence of discriminatory intent, you don't have to show pretext. All you have to show is that discrimination played a role in the decision. So you have competing motives. You have the discriminatory comment, and then you have some negative performance reviews. Sudden downturn in performance evaluations, which is what happened here, can show discriminatory intent if you have biased remarks. This court said that in Danzer. The first negative review is the one by Isabel McFarlane. Correct. And the one before that was also by Isabel McFarlane, and she had given exceeds expectations. Correct. The same person went from exceeds expectations to needs improvement. Doesn't that undercut the argument that it was Wall influencing this? Well, even if Wall didn't influence the February 2013 review, it's his first negative review, but that review in February didn't hint. Is there any evidence in the record that she did? That she what? McFarlane's analysis? No, because Wall wasn't there yet. But one review is not enough to fire somebody after four years of positive reviews, and then the person who replaces the February 2013 reviewer makes a discriminatory comment, and then you get negative reviews. What we're talking about is competing inferences. Why was he fired? Was he fired because of the negative reviews? Was he fired because not only Wall wanted to fire him because he's Egyptian? And to me, this is a fairly clear case. This is a direct evidence case. A negative review doesn't completely undermine a direct evidence case when the direct evidence relates to the plaintiff's termination, and the person who makes the comment recommended the plaintiff's termination. So for these reasons, the plaintiff has a claim under the federal law and under the city human rights law, which we know has a more plaintiff-friendly burden of proof. Thank you. Thank you, counsel. You have reserved some time for rebuttal as well. Good morning, Your Honors. Julie Steiner for HHC. This court has held in Weinstock v. Columbia University that it's not enough just to have some evidence. You need sufficient evidence, and all the evidence taken as a whole must support a rational inference of discrimination. What we have here is, as the plaintiff has pointed out, a comment. But when you look at the context of that comment in terms of all the evidence, a rational jury could not find that that was the reason for his determination. This is an unusual case in that there is direct evidence proffered. I know how to terminate this stupid Egyptian guy. When you take that and you take the circumstantial evidence of the prior years of good performance evaluations, why is that not enough to get it to the jury? There are some other comments as well. For a variety of reasons, Your Honor. Again, the context is very important. What we have here is, when you look back at his first initial challenge to his termination, which was almost immediately after, he did not raise any kind of discrimination claim. He said, I don't like my evaluations. I don't like an argument for the jury. I don't believe so, Your Honor. Again, if you look at one after the other, nothing was ever said. He never once said, I was discriminated against because of my national origin, until what we have here is his complaint. Then in his complaint, or I should say his 56.1 statement, his attorney puts in some alleged contemporaneous notes. There is absolutely no evidence or no authentication of these notes that proves that they were actually made at the time that these statements were made. Then you have, again, the whole litany of the timeline of events that show that he clearly had issues with his performance. As you pointed out, Your Honor, McFarlane initially had given him exceeds expectations. But then he had a serious problem at a root cause analysis meeting where he left out some important information, and McFarlane then gave him, after discussing with him and several other people, the needs improvement evaluation. Then McFarlane was replaced by Wall, and the same things, the same pattern of behavior continued. Then Wall gave him needs improvement, and similar things of that nature occurred. His behavior was continually discussed with him. He was given a performance improvement plan, and he was then reevaluated as promised three months later. Finally, it was determined that his poor performance, his poor relationship skills with other colleagues all warrant his termination. When you look at this one comment that amazingly appears later and never once earlier to the City Human Rights, to his initial complaint, his internal complaint, to his evaluations, in no way- I thought it was in the complaint to the State Division. To the State Division, yes. That was, again, a year later. So, again, the temporal, I should say, lateness of this allegation, the fact that the contemporaneous notes, there's no context about this statement, nor did anyone testify about it. Mr. Moser was given numerous opportunities to explain, why do you think you were discriminated- excuse me, why do you think you were terminated? And each time he answers is, I don't know, I think it's maybe because I was Egyptian. He never once testified, and guess what? Ms. Wall said this, I heard this through a closed door. There's absolutely no context for it, such that, again, the evidence taken as a whole, no rational jury could find that it was discrimination and not his poor performance that was the reason for his termination. If the Court has any other questions. Okay. Thank you, Your Honor. Mr. Bergsten, you have three minutes for rebuttal. To be clear, he made this sworn statement before the City Commission of Human Rights and the State Division of Human Rights shortly after he was fired. So, was he asked at the deposition, why were you fired, and did he- give that statement at that point? He wasn't asked, why were you fired? I went through the deposition. I didn't actually see the question that you often have in these cases. Tell me, you know, what is the basis? I didn't see it. There was a lot of- they were talking over each other during deposition. They got off track. They came close, but it never really happened. So, you know- So, as far as you can recall, there's nothing in his deposition to contradict that he heard this statement. Correct. Is that right? Correct. And so, you know, this court has said that a sworn State Division charge is the equivalent of an affidavit. He did it twice. And we had other statements, too, by the way. There was some- Wall seemed to be sort of, not obsessed, but preoccupied with the plaintiff's religion and his Egyptian nationality. She mentioned to another colleague in plaintiff's presence, he has a different culture than we do. And, you know, I don't know what the context of that could be. There was testimony on that in the deposition where the plaintiff talks about how it came up. And it seems sort of gratuitous. And the plaintiff testified, you know, this is a medical center. Why is she saying this? Why would that be relevant to their discussion? So, you know, we don't just have the stupid Egyptian comment, which is enough for a jury trial, but you have this culture comment also by Wall. Something is going on here with Wall. Now, what we heard from Corporation Counsel was- And that comment, that second comment, was addressed to a Haitian. Which second comment? About something that he's different. Correct. Correct. But, correct. So what we heard from defense counsel was a very good summation. You know, arguing, well, we have a comment, but the comment doesn't override other evidence in the case. But that's why we have jury trials. We have competing motives. Counsel, am I correct that you're not appealing the age discrimination? That's correct. That's correct. Thank you. Thank you. Thank you both. We'll reserve decision.